

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

DEC 1 4 2015

CLERK, U.S. DISTRICT COURT

By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MICHAEL THOMAS COLEGROVE,   §
    PLAINTIFF,   §
           §
VS.   §   CIVIL ACTION NO. 4:14-CV-798-A
           §
CAROLYN W. COLVIN,   §
ACTING COMMISSIONER OF SOCIAL   §
SECURITY,   §
    DEFENDANT.   §

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I.   STATEMENT OF THE CASE

Plaintiff Michael Thomas Colegrove ("Colegrove") filed this action pursuant to Sections

405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision

of the Commissioner of Social Security denying his claim for a period of disability and disability

insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). In March 2011,

Colegrove filed his application for benefits, alleging that his disability began on September 3,

2010. (Transcript ("Tr.") 13, 139-142.) His application for benefits was denied initially and on

reconsideration. (Tr. 13, 72-73, 77-86.) The ALJ held a hearing on January 7, 2013 and issued a

1

decision on April 30, 2013, finding that Colegrove was not disabled because there were jobs that existed in significant numbers in the national economy that Colegrove could perform.  (Tr. 13-28, 34-71.)  On May 24, 2013, the Appeals Council denied Colegrove's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner.  (Tr. 1-8.)

## II.    STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions.  *See* 20 C.F.R. Pt. 404 (disability insurance).  The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. § 404.1520.  First, the claimant must not be presently working at any substantial gainful activity.  Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit.  20 C.F.R. § 404.1527.  Second, the claimant must have an impairment or combination of impairments that is severe.  20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).  Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. § 404.1520(d).  Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work.  *Id.* § 404.1520(e).  And fifth, the impairment

2

must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.

### III.   ISSUES

In his brief, Colegrove presents the following issues:

A. Whether the ALJ erred by failing to give controlling weight to the opinions of Colegrove's treating physician, Charles Marable, M.D. ("Dr. Marable"); and

B. Whether the ALJ erred at Step Five by relying upon the testimony of a vocational expert ("VE").

(Plaintiff's Brief ("Pl.'s Br.") at 1, 4-15).

### IV.   ALJ DECISION

In his April 30, 2013 decision, the ALJ found that Colegrove had not engaged in any substantial gainful activity since September 3, 2010, the alleged date of Colegrove's onset of his disability.  (Tr. 15.)  The ALJ further found that Colegrove suffered from the following severe impairments: "pituitary tumor, low testosterone, degenerative changes to the lumbar and cervical spine, obesity, right rotator cuff tear, affective disorder, and peripheral vision loss."  (Tr. 15.) Next, the ALJ held that none of Colegrove's impairments, or combination of impairments, met or equaled the severity of any impairments in the Listing.  (Tr. 15.)  As to Colegrove's RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.167(a) except he is limited to simple tasks.

(Tr. 16, 26 (emphasis omitted).)

Next, the ALJ found that Colegrove was unable to perform any of his past relevant work. (Tr. 26.)  However, considering Colegrove's age, education, work experience, and RFC, the ALJ concluded, based upon the vocational expert's opinion, that there were jobs that existed in

4

significant numbers in the national economy that Colegrove could perform.   (Tr. 27.)

Consequently, the ALJ concluded that Colegrove was not disabled.  (Tr. 27.)

## V.   DISCUSSION

### A.   <u>Controlling Weight of Treating Physician</u>

Colegrove argues that the ALJ erred in failing to give controlling weight to the opinions

of Colegrove's treating physician, Dr. Marable, in making his residual functional capacity

("RFC") determination.  (Pl.'s Br. at 4-12.)  Specifically, Colegrove claims that the ALJ failed to

properly evaluate Dr. Marable's opinion pursuant to the factors set forth in 20 C.F.R. §

404.1527(c).  (Pl.'s Br. at 9-10.)    Colegrove argues that Dr. Marable's opinions should have

been given more weight as he was the treating physician, "while the only other medical opinions

of record are of non-examining State agency physicians and psychological consultative

examiner, Deborah Whitehead Gleaves, PhD, whose opinion supports those of Dr. Marable."

(Pl.'s Br. at 10.)  In addition, Colegrove, citing to 20 C.F.R. §§ 404.1512(e), 404.1520b(c), and

*Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000), claims that the ALJ "was required to seek

clarification or additional evidence from Dr. Marable about his opinions regarding Plaintiff's

limitations" since the ALJ gave Dr. Marable's opinions only "little weight" and there was not

another medical opinion in the record from a treating or examining source.  (Pl.'s Br. at 11;

Plaintiff's Reply Br. at 11.)  Moreover, Colegrove states that the ALJ's "rationale for affording

'little weight' to Dr. Marable's treating physician opinions are inconsistent with the evidence of

record."  (Pl.'s Br. at 11-12.)

RFC is what an individual can still do despite his limitations.[1]  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  Id.; see Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule.  SSR 96-8p, 1996 WL 374184, at *2.  RFC is not the least an individual can do, but the most.  Id.  The RFC is a function-by-function assessment, with both exertional and nonexertional[2] factors to be considered, and is based upon all of the relevant evidence in the case record.  Id. at *3-5.  The responsibility for determining a claimant's RFC lies with the ALJ.  See Villa v. Sullivan, 895 F.2d 1019, 1023-24 (5th Cir. 1990).  The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence.  SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence.  See 20 C.F.R. § 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5.  The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not

---

[1] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. Perez v. Barnhart, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. Id.

[2] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. Id. Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. Id. at *6.

6

severe. *Id.* The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (superseded only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

Controlling weight is assigned to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). While opinions on the ultimate issue of disability status are reserved to the ALJ, he must consider all medical opinions. 20 C.F.R. § 404.1527(b), (d)(1). Because the determination of disability always remains the province of the ALJ, he can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994);

*Muse*, 925 F.2d at 790.  Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance.  *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." *Newton*, 209 F.3d at 453.  Under the statutory analysis, the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion."  20 C.F.R. §§ 404.1527(c), 416.927(c); SSR 96-6p, 1996 WL 374180, at *3 (S.S.A., July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).

Pursuant to *Newton*, however, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(c) *only* if there is no reliable medical evidence from another treating or examining physician that controverts the treating specialist.  *See Newton*, 209 F.3d at 455–57.  An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," as well as in cases in which "the ALJ weighs the treating physician's opinion on

8

disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507–11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

As stated above, the ALJ found that Colegrove had the RFC to perform sedentary work[3] as defined in 20 CFR 404.1567(a), except he was limited to simple tasks. (Tr. 16.) In making this RFC determination, the ALJ reviewed, *inter alia*, the following evidence in the record: (1) claimant's testimony at the hearing before the ALJ (Tr. 17-18); (2) the extensive treatment and examination records and notes from Dr. Marable, beginning in September 2010, showing, *inter alia*, that Colegrove was diagnosed with a pituitary adenoma and his subsequent treatment (Tr. 19-26); (3) examination records dated in September 2010 in which Stephen Goode, M.D. ("Dr. Goode") indicated that Colegrove's best-corrected visual acuity was 20/25 OD and 20/20 OS

---

[3] Sedentary work is defined as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). To perform the full range of sedentary work, an individual must be able to remain in a seated position for approximately six hours of an eight-hour workday and stand and walk for approximately two hours of an eight-hour day. *See* SSR 96-9p, 1996 WL 374185, at *6 (S.S.A. July 2, 1996).

(Tr. 19; *see* Tr. 331); (4) medical records showing that Colegrove underwent a "transphenoidal resection of his pituitary tumor" in February 2011; (5) a consultative vision examination dated May 2011 in which Melvin Cleveland, O.D. ("Dr. Cleveland"), found that, while there was evidence of a moderate peripheral visual field defect, Colegrove's visual acuity was 20/20 bilaterally (Tr. 20; *see* Tr. 336-37); (6) a consultative mental examination dated June 2011 in which Deborah Whitehead Gleaves, Ph.D. ("Dr. Gleaves"), diagnosed Colegrove with an adjustment disorder with depressed mood and opined that "the claimant's fatigue and lack of energy would interfere with his ability to make occupational adjustments in the full-time competitive work force" (Tr. 21; *see* Tr. 346-51); (7) examination notes dated June 2011 in which Anthony Lee, M.D. ("Dr. Lee") indicated: (a) Colegrove's examination was essentially normal, (b) a June 2011 MRI showed "stable residual adenoma," and (c) further testing was not needed until his one-year post surgery follow up appointment (Tr. 21; *see* Tr. 401-02); and (8) opinions of the state agency medical consultants (Tr. 26; *see* Tr. 383-400, 420-46). As to Dr. Marable's examinations, the ALJ stated, *inter alia*, the following:

> In March 2011, the claimant revisited Dr. Marable regarding his vision problems. Dr. Marable noted the claimant's depression on visual field testing had improved since his pituitary surgery in February 2011. However, the claimant's examination was essentially normal. Nevertheless, Dr. Marable noted the claimant was still 100% disabled and unable to return to work. Later that month, the claimant was administered an EMG/NCS regarding his alleged burning and stinging in his feet. However, there was no electrophysiological evidence of lumbar radiculopathy, lumbar plexopathy, or distal mononeuropathy in the claimant's bilateral lower extremities.
>
> . . . .
>
> The claimant revisited Dr. Marable in March 2011. Dr. Marable noted visual field testing subsequent to the claimant's surgery revealed marked

improvement when compared to prior testing.  The claimant noted he had not experienced any further headaches, but complained of muscle aches.  During the examination, Dr. Marable remarked that he did not see any bitemporal hemianopsia.  Likewise, the remainder of his examination was essentially normal as well.  Nevertheless, Dr. Marable continued to note the claimant was 100% disabled and unable to return to work.

. . . .

Also in June 2011, the claimant returned to Dr. Marable.  However, the claimant's examination was again unremarkable, and Dr. Marable continued to note the claimant was 100% disabled.

. . . .

The claimant returned to Dr. Marable in August 2011.  Dr. Marable noted the claimant's most recent studies in June 2011 were within normal limits.  The claimant also continued to deny headaches.  However, the claimant complained of back pain, lack of energy, and leg and arm numbness and weakness.  The claimant exhibited some mild bitemporal hemianopsia.  However, his motor examination and reflexes were normal.  The claimant also exhibited a positive straight leg raise and decreased range motion in his neck and back.  Dr. Marable noted the claimant was 100% disabled.

. . . .

The claimant revisited Dr. Marable in October 2012.  During the examination, the claimant's straight leg raising was positive, his motor strength was decreased at 4/5, and he had decreased range of motion in his lumbar spine.  Additionally, his sensory examination was decreased in his lower left extremity.  Additionally, there was evidence of bitemporal hemianopsia.  Additionally, Dr. Marable completed a questionnaire regarding the claimant's abilities.  Dr. Marable opined the claimant was unable to work at all due to his loss of peripheral vision and lack of testosterone.  He also noted the claimant had back pain, a right rotator cuff tear, and daily headaches.

In December 2012, the claimant revisited Dr. Marable.  The claimant's examination was essentially unchanged from his prior visit in October 2012. . . .

In January 2013, Dr. Marable completed a residual functional capacity form on behalf of the claimant.  In that document, Dr. Marable opined the claimant could never walk and only sit and stand for half an hour in an 8-hour

11

workday. He also opined the claimant could lift less than 5 pounds. Additionally, Dr. Marable opined the claimant could never reach, perform fine and gross manipulation, feel, or push or pull with his upper extremities, or operate foot controls. Dr. Marable also noted the claimant had loss of field vision and had multiple environmental limitations. Furthermore, Dr. Marable opined the claimant would miss more than 4 days of work per month and was unable to sustain work on a full-time basis.

(Tr. 20-23 (internal citations omitted).)

In evaluating Dr. Marable's opinions, the ALJ stated:

Ordinarily a treating physician's opinion regarding a claimant's disability is to be afforded great or controlling weight. In considering such opinions and determining the weight I should accord them, I am to consider the length, nature, and extent of the treatment relationship; the frequency of the examinations; the supportability by other evidence given by the medical source such as medical signs and laboratory findings; the extent of his explanation; and the consistency with the record as a whole. More weight is to be assigned to the opinion of a specialist. Further, an Administrative Law Judge may reject a treating source opinion after considering the foregoing factors if he finds there is good reason to do so.

I have carefully considered Dr. Marable's multiple opinions in the record. However, his opinions are not supported by his own medical records. The examinations at Exhibit 9F show the claimant was denying and [sic] headaches and his vision was essentially normal, except for problems with color. Although Dr. Marable did periodically note evidence of bitemporal hemianopsia, the severity of that condition was noted to be mild on several occasions. Although the claimant lodged subjective complaints of fatigue and weakness, Dr. Marable's physical examination findings prior to May 2012 failed to reveal any significant objective findings to support the claimant's allegations. Although the claimant began demonstrating some muscle weakness and decreased range of motion in May 2012, the claimant's muscle strength was only diminished to 4/5. I left the record open after the hearing to allow for the submission of additional medical evidence. Submitted at that time was a residual functional capacity completed by Dr. Marable. However, the limitations found within that document are so extreme that it detracts from Dr. Marable's credibility as a whole. Notably, Dr. Marable opined the claimant could only sit for 10 minutes at a time and could not sit for longer than 30 minutes in an 8-hour day. There is no objective medical evidence to suggest the claimant is so affected by his impairments that his ability to sit in an 8-hour period has been eroded to only 30 minutes. Furthermore, at [the]

12

> hearing, the claimant appeared to sit quite comfortably without fidgeting or shifting position for the entire 45-minute hearing, even after I invited him to move around as needed. I also note that Dr. Marable first notes the claimant is completely unable to walk during an 8-hour workday, but then subsequently states the claimant could walk for 10 minutes at a time. These statements are inconsistent and raise questions regarding the accuracy of the alleged limitations. I find overall that the limitations opined by Dr. Marable throughout his treatment with the claimant are inconsistent with Dr. Marable's own treatment notes. When considering this fact along with his extreme and unsupported opinion found at Exhibit 25F, I have given little weight to Dr. Marable's opinions.

(Tr. 25-26 (internal citations omitted).)

Contrary to Colegrove's claims, the ALJ did not err in failing to give controlling weight to the opinions of Dr. Marable, Colegrove's treating physician. In this case, it is clear that the ALJ thoroughly reviewed and considered Dr. Marable's opinions but ultimately determined to give them little weight as they were unsupported and inconsistent with Dr. Marable's own treatment notes. The majority of Dr. Marable's actual opinions appear to be that Colegrove is 100% disabled. However, to the extent that Dr. Marable opined that Plaintiff was disabled and unable to work, such opinion is an issue reserved to the ALJ, and, consequently, is not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(d); SSR 96-5p, 1996 WL 374183. The ALJ did not err in rejecting such opinions from Dr. Marable.

Moreover, while Colegrove disagrees with the ALJ's reasons for rejecting the RFC determinations made by Dr. Marable, there is substantial evidence in the record, including Dr. Marable's own examination notes, that supports the ALJ's RFC and disability determination. (Tr. 16-26.) As stated above, the ALJ may give little or no weight to a treating physician's opinion when there is a good cause for doing so. *Newton*, 209 F.3d at 455-456. In this case, the AJL noted many examinations in which Dr. Marable continued to opine that Colegrove was

13

100% disabled even when the examination was, in essence, "unremarkable." (*See, e.g.*, Tr. 19-26, 353-354, 356-362, 366-369, 374-377.) In addition, the ALJ remarked that Dr. Marable's opinions were not consistent with the record as a whole, specifically as it pertained to Colegrove's ability to sit during an 8-hour day. (Tr. 26, 514.) Even assuming some of the ALJ's statements in his decision were not completely accurate, any error is harmless as substantial evidence supports the ALJ's RFC and disability determination. *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required."); *McNeal v. Colvin*, No. 3:11-CV-02612-BH-L, 2013 WL 1285472, at *27 (N.D. Tex. Mar. 28, 2013) (applying harmless error analysis to the ALJ's improper evaluation of opinion of treating physician); *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (finding that harmless error exists when it is inconceivable that a different administration conclusion would have been reached absent the error).

As to Colegrove's arguments regarding the factors set forth in 20 C.F.R. § 404.1527(c), the Court finds that the ALJ performed such analysis prior to giving little weight to Dr. Marable's opinions. To begin with, as to factors one and two under which the ALJ evaluates the examining and treatment relationship between Colegrove and Dr. Marable, the ALJ clearly recognized that Dr. Marable was Colegrove's treating physician and specifically went through the examination and treatment notes of Dr. Marable from September 2010 through January 2013. (Tr. 19-26; *see* 20 C.F.R. §§ 404.1527(c)(1), (2).) As to factors three, four, and six under which the ALJ evaluates the supportability and consistency of the physician's opinion, as well as any

other factors that "tend to support or contradict the opinion," the ALJ, as set forth above, noted on various occasions how Dr. Marable's ultimate opinion that Colegrove was disabled was not consistent with the other evidence in the record, including Dr. Marable's own treatment and examination notes. (Tr. 19-26; *see* 20 C.F.R. §§ 404.1527(c)(3), (4), (6). As to factor five, where more weight is generally given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist," the ALJ was aware that Dr. Marable was Colegrove's treating neurologist as he clearly reviewed Dr. Marable's multiple examinations of Colegrove, which indicated that Dr. Marable was board certified in neurology. *See* 20 C.F.R. § 404.1527(c)(5). Because the ALJ properly considered the opinions of Dr. Marable, remand is not required.

Moreover, contrary to Colegrove's assertions, the ALJ did not have a duty to recontact Dr. Marable to seek clarification or additional evidence about his opinion. The Court notes, however, that this argument appears to be based on a misunderstanding of the law. The Fifth Circuit Court of Appeals stated in *Newton v. Apfel* that "if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e)." *Newton,* 209 F.3d at 453. However, the cited regulation was amended, effective March 26, 2012 and the requirement to recontact the treating physician provision cited in *Newton* was deleted. *See Stewart ex rel. J.F. v. Colvin,* No. 1:13CV22–LG–JMR, 2014 WL 1569542, at *8 (S.D. Miss. April 17, 2014); Requirement to Recontact Medical

Sources, 77 Fed. Reg. 10,651, 10,655, 10,656 (Feb. 23, 2012) (to be codified at 20 C.F.R. §§ 404.1512, 416.912) ("[T]he regulations regarding 'recontacting medical sources' [in 20 C.F.R. 404.1512(e) ] have changed since the ALJ's decision"). Under the new regulations, the decision to recontact a treating source is a matter within the ALJ's discretion. *Stewart,* 2014 WL 1569542, at *8; *see* 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1). Under the revised regulations, the ALJ *may* recontact the treating physician if the evidence is inconsistent or if the ALJ has insufficient evidence to determine whether the claimant is disabled. *See* 20 C.F.R. §§ 404.1520b(c), 416.920b(c). In this case, as described above, the evidence was more than sufficient to allow for the ALJ to make a proper assessment of Colegrove's impairments and disability claim. Consequently, the ALJ did not err in failing to recontact Dr. Marable.

### B.    Step Five Decision

Next, Colegrove argues that the ALJ erred at Step Five in finding, based on the VE's testimony, that he could perform other jobs that existed in significant numbers in the national economy. (Pl.'s Br. at 13-15.) Colegrove claims that, based on the RFC determination that he had the ability to perform sedentary work requiring only simple tasks, "the ALJ erred in concluding that, pursuant to SSR 00-4p, no conflict exists between the vocational expert's testimony regarding the existing jobs compatible with Plaintiff's limitations and the requirements of those jobs under [*Dictionary of Occupational Titles* (DOT)]." (Pl.'s Br. at 14.) Colegrove argues that neither the ALJ in his decision nor the VE at the hearing clearly or accurately identified the DOT codes for the jobs of small products assembler, inspector, and sorter, which were the jobs the VE testified that Colegrove was capable of performing. (Pl.'s Br. at 14.)

16

Specifically, Colegrove asserts that a review of the DOT index reveals inconsistencies between the nature of the jobs identified by the ALJ and Colegrove's RFC determination. (Pl.'s Br at 14-15.) First, Colegrove notes that both a sedentary assembler job (DOT 700.684-014) and a sedentary inspector job (DOT 706.687-026) have a Specific Vocational Preparation ("SVP")[4] level of 3, which Colegrove argues is beyond his RFC ability to perform only simple tasks. (Pl.'s Br. at 14.) Second, Colegrove states that the two jobs in the DOT entitled "small products assembler" (DOT 706.684-022 & 739.687-030) as well as a "sorter" job (DOT 706.587-014) are light,[5] not sedentary jobs as required by the ALJ's RFC determination. (Pl.'s Br. at 14.)

In this case, as stated above, the ALJ found that Colegrove had the RFC to perform sedentary work, limited to simple job tasks. (Tr. 16.) Thereafter, at Step Five, the ALJ held, based upon the testimony of the VE, that Colegrove could perform the jobs of small products assembler, inspector, and sorter that existed in significant numbers on the national economy. (Tr. 27.) In making such a determination, the ALJ stated:

---

[4] In addition to exertional limits, jobs are categorized as unskilled, semi-skilled and skilled. To determine the skill level, consideration is given to how long it takes to learn the job by examining the level of SVP. SVP levels 1–2 (short demonstration only and up to one month respectively) are unskilled jobs, levels 3–4 (up to three months and up to six months) are semi-skilled, and levels 5 and higher (over six months and up) are skilled jobs. DOT, App. C (rev. 4th ed. 1991). Semiskilled work typically requires "some skills but does not require doing the more complex work duties." 20 C.F.R. § 1568(b).

[5] Light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

17

In determining whether a successful adjustment to other work can be made, I must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. . . .

If the claimant had the residual functional capacity to perform the full range of sedentary, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21.   However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.   To determine the extent to which these limitations erode the unskilled sedentary occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.   The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as small products assembler (for which there are 3,400 jobs in the state of Texas and 40,000 jobs in the national economy), inspector (for which there are 2,500 jobs in the state of Texas and 30,000 jobs in the national economy), and sorter (for which there are 2,000 jobs in the state of Texas and 25,000 jobs in the national economy).

Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the *Dictionary of Occupational Titles*.

Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.   A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

(Tr. 27.)

The claimant bears the burden of proof on the first four steps, and then the burden shifts

to the Commissioner on the fifth step to show that the claimant can perform other substantial

work in the national economy.   *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002);

*Newton*, 209 F.3d at 453.   "Once the Commissioner makes this showing, the burden of proof

shifts back to the claimant to rebut this finding." *Newton,* 209 F.3d at 453. In this case, the ALJ supported his determination at Step 5 by relying upon the testimony of the VE.

A VE is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala,* 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen,* 805 F.2d 1168, 1170 (5th Cir. 1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* In testifying, a VE "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields,* 805 F.2d at 1170.

The Court concludes that, based on the testimony of the VE at the hearing, the ALJ did have substantial evidence to support his decision at Step Five that Colegrove could perform the jobs of small products assembler, inspector, and sorter that existed in significant numbers in the national economy. (Tr. 27.) While Colegrove complains that the ALJ did not cite any DOT codes for the jobs identified at Step Five, Colegrove cites no support for his claim that such DOT numbers must be identified by the VE. *See Haas v. Barnhart,* 91 F. App'x 942, 948 (5th Cir.2004) ("[The claimant] cites no support for his claim that the DOT numbers for positions identified by the VE must be given."); *McMillian v. Colvin,* No. 4:12-CV-661-A, 2014 WL 61172, at *5, (N.D. Tex. Jan. 6, 2014) ("Although not required to do so, the VE did not identify the specific DOT codes associated with the jobs of customer service representative and phone order clerk."); *Nichols v. Astrue,* No. 5:09–CV–18–DCB–JMR, 2010 WL 5690390, at *12 (S.D. Miss. Apr.20, 2010) ("Plaintiff does not cite any support for his claim that the DOT numbers for

19

positions identified by the VE must be given."), *adopted in* 2011 WL 359141 (S.D. Miss. Feb.1, 2011).

While it appears that the jobs found by Colegrove that require an ability to perform light work are outside of the ALJ's RFC determination, the Court notes that SSR 00-4p clarifies that the DOT lists the ***maximum*** requirements for a position as it is generally performed, not the full range of requirements.  SSR 00-4p, 2000 WL 1898704, at *3 (S.S.A. Dec. 4, 2000).   Moreover, the Court is not convinced that a "SVP level in a DOT listing . . . addresses whether a job entails only simple repetitive tasks." *Otte v. Comm'r, Soc. Sec. Admin.*, No. 3:08-CV-2078-P, 2010 WL 4363400, at *7 (N.D. Tex. Oct. 18, 2010).  The SVP level refers to the "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  DOT, App. C (rev. 4th ed. 1991).  Instead, it is the Reasoning Development Level ("RDL") that appears to specify the type of reasoning capabilities each of the described jobs requires.  *Id.* at *8.  In this case, both the sedentary assembler job (DOT 700.684-014) and the sedentary inspector job (DOT 706.687-026) referred to by Colegrove have a RDL of 2,[6] which has been found to be compatible with a RFC restriction to perform simple job tasks.  *See Zapata v. Colvin*, No. 4:13-CV-340-Y, 2014 WL 4354243, at *10  (N.D. Tex. Sept. 2, 2014) ("Courts have repeatedly found that jobs

_____

[6] RDL 2 provides:

Level 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations.

*DOT*, App. C, 1009 (rev. 4th ed. 1991).

with a RDL of 2 are not necessarily inconsistent with limitation to simple instructions and routine tasks."); *Longoria v. Colvin*, No. 3:13-CV-1690-B-BK, 2014 WL 2777473, at *8 (N.D. Tex. May 21, 2014), *adopted in* 2014 WL 2777375 (N.D. Tex. June 18, 2014) (finding that RDL 3 jobs do not facially conflict with an RFC limiting the claimant to "only simple job tasks").[7] Thus, the Court finds that no conflict exists between the VE's testimony and the DOT, at least as to the sedentary assembler and sedentary inspector jobs specifically identified by Colegrove.

As noted above, the value of a VE is that he "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170. In this case, the VE testified that a person with Colegrove's RFC determination, including a limitation to the performance of simple work, could perform various jobs that exist in significant numbers in the national economy. Such testimony provides substantial evidence for the ALJ to rely on at Step Five.

Moreover, while Colegrove searched the DOT for assembler, inspector, and sorter position that allegedly conflicted with the VE's testimony and the ALJ's RFC determination, the

---

[7] *See, e.g., Caronia v. Colvin*, No. 4:12–CV–595–Y, 2013 WL 5192904, at *6 (N.D. Tex. Sept.13, 2013); *Gaige v. Astrue*, No. 4:12–CV–008–A, 2013 WL 1291754, at *14 (N.D. Tex. Mar.1, 2013), *adopted in* 2013 WL 1286289 (N.D. Tex. Mar.29, 2013); *Webb v. Astrue*, No. 4:08–CV–747–Y, 2010 WL 1644898, at *12 n. 10 (N.D. Tex. Mar. 2, 2010), *adopted in* 2010 WL 1644697 (N.D. Tex. Apr.22, 2010) ("A job as a city bus driver that requires a RDL of three is not necessarily inconsistent with an RFC that includes only the ability to perform simple, routine work tasks); *Veal v. Soc. Sec. Admin.*, 618 F.Supp.2d 600, 613–14 (E.D.Tex.2009); *Pete v. Astrue*, No. 08–CV–774, 2009 WL 3648453, at *5–6 (W.D. La. Nov. 3, 2009); *Dugas v. Astrue*, No. 1:07CV605, 2009 WL 1780121, at *6 (E.D. Tex. June 22, 2009) ("A limitation of performing 1–2 step instructions in a simple, routine work environment does not necessarily preclude the ability to perform jobs with reasoning levels of 2 or 3.") (internal citations omitted); *Adams v. Astrue*, No. 07CV1248, 2008 WL 2812835, at *3 (W.D. La. June 30, 2008) ("As several courts have held, reasoning level two requires the worker to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations, and appears consistent with residual functional capacity to perform simple, routine work tasks.").

Court found several such positions that do not provide such alleged conflict as they are sedentary jobs that contain both a SVP level and a RDL of 2 or less. For example, DOT 713.687-018 and 734.687-018 are sedentary assembler jobs with SVP levels of 2 and RDLs of 1. Thus, even if a conflict did exist with some of the jobs found by Colegrove, there are at least two assembler positions on which the ALJ could accurately rely in making his decision at Step Five. Thus, any proffered error would not be prejudicial and would not warrant a reversal of the ALJ's decision. *See Gaspard v. Soc. Sec. Admin. Comm'r*, 609 F. Supp. 2d 607, 617 (E.D. Tex. Apr. 8, 2009) ("The Commissioner's burden at Step 5 of the sequential evaluation process . . . is satisfied by showing the existence of only *one* job with a significant number of available positions that the claimant can perform.")

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a

proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **December 28, 2015** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED December 14, 2015.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

23